UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEELEY BAMFORTH,
                           Plaintiff,

v.                                       6:11-CV-0725
                                             (GTS/ATB)

FRONTIER COMMC'NS CORP.; and
PRUDENTIAL INS. CO. OF AM.,
                           Defendants.
_____

APPEARANCES:                               OF COUNSEL:

HACKER MURPHY, LLP                  THOMAS D. BUCHANAN, ESQ.
  Counsel for Plaintiff
7 Airport Park Boulevard
Latham, New York 12110-0104

LITTLER MENDELSON P.C.            JACQUELINE P. POLITO, ESQ.
  Counsel for Def. Frontier Commc'ns Corp.  MARGARET A. CLEMENS, ESQ.
400 Linden Oaks, Suite 110              TRENT M. SUTTON, ESQ.
Rochester, New York 14625

d'ARCAMBAL OUSLEY &                MICHELLE J. d'ARCAMBAL, ESQ.
CUYLER BURK LLP
  Counsel for Def. Prudential Ins. Co. of Am.
40 Fulton Street, Suite 1005
New York, New York 10038

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

      Currently before the Court, in this employee benefits action filed by Keeley Bamforth ("Plaintiff") against Frontier Communications Corporation ("Defendant Frontier") and Prudential Insurance Company of America ("Defendant Prudential"), is Defendant Prudential's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No. 15). For the reasons set forth below, Defendant Prudential's motion is granted.

I.     **RELEVANT BACKGROUND**

    A.     **Plaintiff's Complaint**

Generally, liberally construed, Plaintiff's Complaint alleges as follows. Starting on October 2, 1989, Defendant Frontier employed Plaintiff as a Telephone Directory Clerk. (Dkt. No. 1, at ¶ 3 [Plf.'s Compl.].) Through Defendant Prudential, Defendant Frontier provided group disability insurance coverage to its employees, including Plaintiff. (*Id*. at ¶ 7.) More specifically, Plaintiff was issued a disability policy under the Frontier Communications Corporation Disability Plan. (*Id*. at ¶ 10.) Effective January 11, 2010, Defendant Prudential awarded Plaintiff short-term disability benefits. (*Id*. at ¶ 13.) However, by letter dated July 26, 2010, Defendant Prudential and Defendant Frontier (collectively "Defendants") arbitrarily denied Plaintiff's claim for short-term disability benefits and disallowed her claim for long-term disability benefits, effective June 28, 2010. (*Id*. at ¶¶ 14, 20, 24, 26-28.)[1] In addition, beginning on April 11, 2011, Defendant Frontier refused, despite Plaintiff's request, to provide her with a complete copy of her short-term and long-term disability claim file (as well as all of the materials pertinent to Defendant Frontier's determination concerning Plaintiff's short-term and long-term disability claims). (*Id*. at ¶¶ 39-43.) Moreover, at unspecified times, Defendant Prudential regularly communicated protected health information to Defendant Frontier, as part of an effort to actively participate in Defendant Frontier's discrimination against Plaintiff for asserting her right to disability benefits under the plan. (*Id*. at ¶¶ 47, 51.) This discrimination culminated in Defendant Frontier's termination of Plaintiff by letter dated February 21, 2011. (*Id*. at ¶¶ 49, 51.)

---

       1     Upon two appeals by Plaintiff, Defendant Prudential (by letters dated October 21, 2010, and December 15, 2010) upheld its denial of benefits. (Dkt. No. 1, at ¶¶ 15-17.) On or about February 17, 2011, Defendant Prudential reversed its July 26, 2010, denial of short-term disability benefits; however, it agreed to pay short-term disability benefits only through the maximum duration of August 31, 2010. (*Id*. at ¶ 34.)

Based on these factual allegations, liberally construed, Plaintiff's Complaint asserts the following three causes of action against Defendants arising from 29 U.S.C. § 1132 ("ERISA § 502") and 29 U.S.C. § 1140 ("ERISA § 510"): (1) a cause of action claiming that Defendants have violated her rights under ERISA § 502(a)(1)(b) by failing to provide with her long-term benefits under the plan from September 1, 2010, until the date of judgment in these proceedings; (2) a cause of action claiming that Defendant Frontier has violated her rights under ERISA § 502(c) by failing to provide her with a complete copy of her short-term and long-term disability claim file (as well as all of the materials pertinent to Defendant Frontier's determination concerning Plaintiff's short-term and long-term disability claims); and (3) a cause of action claiming that Defendants have violated her rights under ERISA § 510 by discriminating against her for asserting her right to disability benefits under the plan, specifically, through (a) Defendant Prudential's regular communication of her protected health information to Defendant Frontier in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), and (b) Defendant Frontier's termination of her employment.  (*Id.* at ¶¶ 32-54.)

Familiarity with the factual allegations supporting these causes of action in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

### B. Parties' Briefing on Defendant Prudential's Motion

#### 1. Defendant Prudential's Memorandum of Law

Generally, in support of its motion for judgment on the pleadings, Defendant Prudential argues that, to the extent that Plaintiff's third cause of action is asserted against Defendant Prudential, that cause of action must be dismissed for two reasons.  (*See generally* Dkt. No. 15, Attach. 1, at 2-3, 5-8 [attaching pages "2," "3," and "5" through "8" of Def.'s Prudential's

3

Memo. of Law]; Dkt. No. 15, Attach. 8, at 2 [Ex. F to Def.'s Motion, attaching Group Disability Insurance Authorization dated Jan. 26, 2010].)

First, argues Defendant Prudential, Plaintiff cannot assert a claim against Defendant Prudential arising under HIPAA because (a) HIPAA does not confer on Plaintiff a private right of action, and (b) based on a document that is relied upon by and is integral to Plaintiff's Complaint (specifically, the sixth paragraph of the Group Disability Insurance Authorization signed by Plaintiff on January 26, 2010), Plaintiff authorized Defendant Prudential to, *inter alia*, "redisclose[]" her medical information, which "is no longer governed by federal rules governing privacy and confidentiality of health information."  (*Id.*)

Second, argues Defendant Prudential, because Plaintiff's discrimination claim against Defendant Prudential under ERISA § 510 is based on Defendant Prudential's allegedly wrongful disclosure of her confidential health information to Defendant Frontier (i.e., in violation of HIPAA), and because that disclosure was not in fact wrongful (in that it did not violate HIPAA), Plaintiff has no plausible cause of action against Defendant Prudential for discrimination under ERISA § 510.  (*Id.*)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion for judgment on the pleadings, Plaintiff asserts three arguments.  (*See generally* Dkt. No. 16, Attach. 3, at 3-9 [attaching pages "3" through "9" of Plf.'s Opp'n Memo. of Law].)

First, argues Plaintiff, contrary to Defendant Prudential's characterization of Plaintiff's third cause of action, that cause of action in no way intends to assert a private right of action under HIPAA, but alleges merely that in administering Plaintiff's claim Defendant Prudential failed to follow its own internal guidelines and procedures–including the legal requirements

established pursuant to HIPAA–which likely impacted Defendant Frontier's decision to discriminate against Plaintiff (through terminating her employment), and likely rendered Defendant Prudential liable to Plaintiff under ERISA § 510 (which prohibits such discrimination by "any person"). (*Id.*)

Second, argues Plaintiff, among the factual allegations plausibly suggesting Defendant Prudential's intent and/or conspiracy to so discriminate against Plaintiff are (a) Defendant Prudential's alleged failure to follow the legal requirements established pursuant to HIPAA, (b) its prior termination of Plaintiff's benefits, and (c) Defendant Frontier's subsequent termination of Plaintiff's employment. (*Id.*)

Third, argues Plaintiff, nothing in the Group Disability Insurance Authorization signed by Plaintiff on January 26, 2010, plausibly suggests that Defendant Prudential was permitted to "redisclose" Plaintiff's confidential health information to Defendant Frontier, because (a) the first paragraph of that Authorization permitted the "disclos[ure]" of the information in question by health care providers to only Defendant Prudential, "its agents, employees and representatives," (b) Defendant Prudential's letters to Defendant Frontier dated October 21, 2010, and December 13, 2010 (which are incorporated by reference in the Complaint) expressly state that, "because of the confidentiality of [Plaintiff's] medical condition we are unable to share . . . with you [our separate letter to Plaintiff advising her of our decision]," and (c) HIPAA requires an authorization for the release of healthcare information, and here no such authorization exists. (*Id.*)

### 3. Defendant Prudential's Reply Memorandum of Law

Generally, in reply to Plaintiff's response, Defendant Prudential asserts two arguments. (*See generally* Dkt. No. 17, at 4-10 [attaching pages "1" through "7" of Def. Prudential's Reply Memo. of Law].)

5

First, argues Defendant Prudential, Plaintiff's concession that HIPAA confers on her no private right of action warrants the dismissal of her third cause of action as against Defendant Prudential for two reasons: (a) contrary to Plaintiff's argument that her third cause of action (as against Defendant Prudential) is based on her allegation that "Prudential failed to follow its own internal guidelines and procedures," no such allegation is made in either her third cause of action or elsewhere in her Complaint; and (b) rather, Plaintiff's third cause of action (as against Defendant Prudential) hinges solely on a violation of HIPAA, and no violation of HIPAA has occurred based on both (1) the lack of a private right of action and (2) the sixth paragraph of the Authorization, which is no way undermined by either the first paragraph of the Authorization or Defendant Prudential's letters to Defendant Frontier dated October 21, 2010, and December 13, 2010.  (*Id.*)

Second, argues Defendant Prudential, even if Plaintiff's discrimination claim against Defendant Prudential pursuant to ERISA § 510 could somehow be liberally construed as being based on the denial of long-term benefits (or some other conduct of Defendant Prudential), that claim would fail for two reasons: (a) ERISA § 510 protects against only interference with "protected rights," and Plaintiff has no protected right to long-term disability benefits under the plan (but only a protected right to *seek* long-term benefits according to the procedures set out in the long-term plan documents, which procedures she availed herself of, and which procedures Defendant Prudential followed as claim reviewer, based on her own allegations); and (b) even if ERISA § 510 may apply to entities other than employers, it may apply only to non-employers who have "fundamentally change[d] the employer-employee relationship," and here Defendant Prudential (which, again, was merely a claims reviewer) did not fundamentally change Plaintiff's employment relationship, based on Plaintiff's factual allegations.  (*Id.*)

6

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions for Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases). In evaluating such motions, district courts must accept all allegations in the complaint as true and draw all reasonable inferences in the Plaintiff's favor. *Patel*, 259 F.3d at 126 (citing *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 [2d Cir. 1998]). A court may not dismiss a case through judgment on the pleadings "unless it is satisfied that the complaint cannot state any set of facts that would entitle him to relief." *Patel*, 259 F.3d at 126 (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 [2d Cir. 1994]).

For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.). In addition, the Court will merely add a few words regarding what documents are considered when a dismissal for failure to state a claim is contemplated.

Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial

notice for the factual background of the case.[2]

### B.     Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Memorandum-Decision and Order, which (again) is intended primarily for review by the parties.  (*See generally* Dkt. No. 15, Attach. 1 [Def. Prudential's Memo. of Law]; Dkt. No. 16, Attach. 3 [Plf.'s Opp'n Memo. of Law].)

---

[2]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

### III. ANALYSIS

    A. **Whether Plaintiff's Third Cause of Action Should Be Dismissed to the Extent that It Asserts a Claim Against Defendant Prudential for a Violation of HIPAA**

After carefully considering the matter, the Court answers this question in the affirmative for each of the alternative reasons offered by Defendant Prudential in its memoranda of law. (*See generally* Dkt. No. 15, Attach. 1, at 2-3, 5-7 [attaching pages "2," "3," and "5" through "7" of Def.'s Prudential's Memo. of Law]; Dkt. No. 17, at 4-5 [attaching pages "1" and "2" of Def. Prudential's Reply Memo. of Law]; *see also, supra,* Parts I.B.1. and I.B.3. of this Decision and Order [describing those reasons].) The Court would add only that, despite Plaintiff's argument that its third cause of action in no way intends to assert a private right of action under HIPAA (*see* Dkt. No. 16, Attach. 3, at 4 [attaching page "4" of Plf.'s Opp'n Memo. of Law]), the Court finds that, when liberally construed (as all pleadings must be),[3] Plaintiff's Complaint does attempt to assert a claim under HIPAA. (*See* Dkt. No. 1, at ¶ 46 [alleging that "Defendant Prudential regularly communicated protected health information to Defendant Frontier, in violation of . . . HIPAA"] [internal quotation marks omitted].)

For all of these reasons, Plaintiff's third cause of action is dismissed to the extent that it asserts a claim against Defendant Prudential for a violation of HIPAA.

---

    [3] All complaints must be construed "liberally." *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) ("In making this assessment [of the pleading sufficiency of a complaint], we must . . . construe the complaint liberally.") (internal quotation marks omitted).

**B.     Whether Plaintiff's Third Cause of Action Should Be Dismissed to the Extent that It Asserts a Claim Against Defendant for a Violation of ERISA § 510**

After carefully considering the matter, the Court answers this question in the affirmative for each of the alternative reasons offered by Defendant Prudential in its memoranda of law. (*See generally* Dkt. No. 15, Attach. 1, at 3, 8 [attaching pages "3" and "8" of Def.'s Prudential's Memo. of Law]; Dkt. No. 17, at 4-10 [attaching pages "1" through "7" of Def. Prudential's Reply Memo. of Law]; *see also, supra,* Parts I.B.1. and I.B.3. of this Decision and Order [describing those reasons].)  The Court would add only the following five points.

First, it is difficult for the Court to find that Plaintiff has alleged facts plausibly suggesting a "violation" of HIPAA sufficient to support her discrimination claim under ERISA § 510 where she does not have standing to assert a HIPAA claim, and the sole entity that does have such standing (an agency of the United States government) is not a party to this action.  *Cf. Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 882 (5th Cir. 2010) (finding that plaintiff failed to establish sufficient intent to support a claim of discrimination under ERISA immediately before finding that plaintiff's HIPAA claims without merit because plaintiff had no private cause of action under HIPAA).[4]

---

[4]     Although this fact is not clear from the Fifth Circuit's decision in *Roberts*, it appears from the plaintiff's complaint in that case that her claim of discrimination under ERISA was premised on, *inter alia*, a violation of HIPAA.  *See Roberts v. Unitrin Specialty Lines Ins. Co.*, 06-CV-0380, Second Am. Complaint at ¶ 73 (5th Cir. filed Oct. 11, 2006) (alleging that violation of HIPPA was among acts giving rise to plaintiff's retaliation claim under ERISA), accord, *Roberts v. Unitrin Specialty Lines Ins. Co.*, 06-CV-0380, Am. Compl., at ¶ 31 (5th Cir. filed March 13, 2006).

Second, even if a violation of HIPAA could support a discrimination claim under ERISA § 510, the Court would find that Plaintiff's Authorization plausibly suggests that there was no such violation of ERISA § 510. Plaintiff's reliance on the first paragraph of that Authorization is misplaced, because that paragraph regards merely the initial "disclos[ure]" of the information in question from Plaintiff's health care providers to Defendant Prudential (and its its agents, employees and representatives). (Dkt. No. 15, Attach. 8, at 2 [Ex. F to Def.'s Motion, attaching Group Disability Insurance Authorization dated Jan. 26, 2010].) Rather, it is the sixth paragraph of the Authorization that controls. That paragraph (1) distinguishes between "disclosure[]" and "redisclosure[]" of the information in question (using the two terms in the same sentence in way that recognizes the distinction between the two terms), (2) permits the "redisclosure[]" of the information in question, and (3) recognizes that the information in question is no longer covered by, *inter alia*, HIPAA. (*Id.* [stating "I understand that any information that is disclosed pursuant to this authorization may be redisclosed and is no longer covered by federal rules regarding privacy and confidentiality of health information"].)

Plaintiff's argument that the Authorization is insufficient to permit the redisclosure of the information in question under HIPAA because "HIPAA requires an authorization for the release of healthcare information" (Dkt. No. 16, Attach. 3, at 8 [attaching page "8" of Plf.'s Opp'n Memo. of Law) is question begging: the Group Disability Insurance Authorization that Plaintiff signed on January 26, 2010, is the "authorization" required by HIPAA.

While the Authorization may be considered on Defendant's motion only if it is integral to the Complaint (*see, supra,* Part II.A. of this Decision and Order [describing the documents that may be considered on a motion for judgment on the pleadings]), the Court finds that the Authorization is integral to the Complaint for two reasons: (1) as alleged, Plaintiff's third cause

of action (as asserted against Defendant Prudential) turns on what health information Plaintiff did and did not authorize Defendant Prudential to redisclose about her to third-parties, including Defendant Frontier (Dkt. No. 1, at ¶ 46); and (2) in any event, the Authorization expressly references, and is plausibly construed as a relevant part of, the "Group Disability Insurance [Policy]" referenced in the Complaint (*see, e.g., id.* at ¶ 7, 46; Dkt. No. 15, Attach. 8, at 2). The Court notes that Plaintiff neither argues that the Authorization is not integral to her third cause action nor disputes the accuracy of the copy of the Authorization provided by Defendant. (*See generally* Dkt. No. 16, Attach. 3, at 3-9 [attaching pages "3" through "9" of Plf.'s Opp'n Memo. of Law].) Indeed, to the contrary, Plaintiff herself attempts to rely on the first paragraph of the Authorization in opposing the motion to dismiss. (*Id.* at 7 [attaching page "7" of Plf.'s Opp'n Memo. of Law].) Under the circumstances, the Court may, and does, consider the Authorization without converting Defendant's motion into a one for summary judgment.

Third, despite Plaintiff's late-blossoming argument that her discrimination claim under ERISA is based not merely on a violation of HIPAA but also on a violation of Defendant Prudential's "own internal guidelines and procedures . . . in administering [Plaintiff's] claim" (Dkt. No. 16, Attach. 3, at 4, 7-8 [attaching pages "4," "7" and "8" of Plf.'s Opp'n Memo. of Law]), none of the 55 paragraphs of Plaintiff's Complaint allege facts plausibly suggesting a violation of such internal guidelines and procedures (*see generally* Dkt. No. 1). Rather, the sole paragraph regarding the disclosure of health information references a violation of only HIPAA. (*Id.* at ¶ 46.)

The Court acknowledges that incorporated by reference in Plaintiff's Complaint are two letters sent by Defendant Prudential to Defendant Frontier expressing an unwillingness by Defendant Prudential to redisclose Plaintiff's health information to Defendant Frontier. (Dkt.

No. 16, Attach. 1, at 2-3 [attaching letters from Def. Prudential to Def. Frontier dated Oct. 21, 2010, and Dec. 13, 2010, stating that, "because of the confidentiality of [Plaintiff's] medical condition we are unable to share . . . with you [our separate letter to Plaintiff advising her of our decision]"].) Setting aside the fact that the letters exhibit such an unwillingness on only two occasions (approximately nine to eleven months after Plaintiff signed her Authorization), and the fact that the identical language contained in the letters indicate that they are merely *form*s,[5] the fact remains that the letters do not somehow plausibly suggest that the sixth paragraph of the Authorization was somehow not binding on Plaintiff and effective under HIPAA (which is a legal issue determined independently of such letters).

Fourth, in her opposition to Defendant Prudential's motion, Plaintiff submits for the Court's consideration not only the two letters referenced above but seven pages of what Plaintiff describes as Defendant Prudential's "internal notes." (Dkt. No. 16, at ¶ 6; Dkt. No. 16, Attach. 2.) These notes fail to cure the pleading deficiencies in the Complaint. As an initial matter, the Court has trouble finding that the notes are either incorporated by reference in or integral to Plaintiff's Complaint. Furthermore, even if they are either incorporate by reference or integral, the notes do not add any material allegation to the Complaint. Granted, the notes indicate that, approximately four-and-a-half months after Plaintiff signed the above-described Authorization, Defendant Frontier essentially asked Defendant Prudential to communicate to Defendant Frontier some of Plaintiff's health information, because Plaintiff had been out of work for a

---

[5] (*See* Dkt. No. 16 [Affid. of Plf.'s Counsel, characterizing the letters as "exemplar copies of letters which, upon information and belief, are customarily sent to the employers of the insured's . . . ."].)

"long time"; and Defendant Prudential communicated some of that health information.[6] However, the Complaint already contains an allegation that Defendant Prudential "communicated protected health information [about Plaintiff] to Defendant Frontier . . ." and that "Defendant Prudential actively participated in Defendant Frontier's efforts to" terminate Plaintiff's employment in a discriminatory way. (Dkt. No. 1, at ¶¶ 46-51.) More important, the notes in no way undermine, and indeed confirm the binding and effective nature of, the sixth paragraph of the above-described Authorization, which permits Defendant Prudential to redisclose Plaintiff's health information to Defendant Frontier.

Fifth, and finally, yet another alternative reason exists to dismiss Plaintiff's discrimination claim under ERISA § 510 against Defendant Prudential: ERISA § 510 "only reaches conduct which fundamentally changes the employer-employee relationship so as to interfere with pension rights." *Swanson v. U.A. Local 13 Pension Plan*, 779 F. Supp. 690, 701 (W.D.N.Y. 1991), *aff'd sub nom. Swanson v. U.A. Local 13*, 953 F.2d 636 (2d Cir. 1991). Although it is possible that non-employers such as plan administrators may violate ERISA § 510, that occurrence is rare, because most non-employers do not have authority to fundamentally change the employer-employee relationship. *Adams v. Koppers Co., Inc.*, 684 F. Supp. 399, 402 (W.D. Pa. 1988) ("[T]he circumstances in which the plaintiff will have a valid claim against the plan administrator under [§ 510] are rare; most plan administrators do not have authority to discharge employees or take any of the other proscribed actions."), *accord, Swanson,* 779 F.

---

[6] More specifically, the notes contain the following entry following a telephone conversation on May 11, 2010: "[Ms. Bamforth's employer] asks if Dr. would indicate anything about [Ms. Bamforth] rtw p/t, since [Ms. Bamforth] has been OOW for long time. Informd, due to med. Pru has rec'd, that indicated that due to the pain [Ms. Bamforth] in, that impacts [Ms. Bamforth]'s ability to think clearly, hence Dr. is keeping [Ms. Bamforth] OOW; ER ackowldg this. [Ms. Bamforth] apprvd to 5/14." (Dkt. No. 16, Attach. 2, at 3.)

Supp. at 702.[7]

Here, Plaintiff's Complaint does not allege facts plausibly suggesting that Defendant Prudential had the power to discharge, fine, suspend, expel or discipline Plaintiff. Indeed, the plan documents (which are incorporated by reference in Plaintiff's Complaint) confer on Defendant Prudential no such power. Moreover, even if the Court could consider the seven pages of Defendant Prudential's "internal notes" on Defendant Prudential's motion, the Court would find that those notes plausibly suggest that Defendant Prudential was simply confirming what Defendant Frontier already knew (namely, that Plaintiff's doctor was keeping her out of work because she was experiencing pain related to her medical condition).

For all of these reasons, Plaintiff's third cause of action is dismissed to the extent that it asserts a claim against Defendant Prudential for a violation of ERISA § 510.

**ACCORDINGLY,** it is

**ORDERED** that Defendant Prudential's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's third cause of action is **DISMISSED** to the extent that it asserts any claim against Defendant Prudential.

Dated: December 12, 2012
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[7]  *See, e.g., Keir v. Unumprovident Corp.*, 02-CV-8781, 2010 WL 3566878, *9 (S.D.N.Y. Sept. 14  2010) (dismissing plaintiff's ERISA ¶ 510 claim against claims administrator because no genuine issue of material fact as to whether claims administrator "some adverse action that affected the plaintiff's employment with the intent to interfere with the plaintiff's benefits rights under ERISA").